## MORGAN *v.* THE STATE.

1. Evidence was offered in behalf of the accused, to the effect that recently some one had endeavored to break into the house in which the accused was spending the night at the time of the homicide, the accused having, from within the house, shot the deceased, who was without. On objection to the evidence the court remarked, "Of course, what occurred on the other occasion has nothing to do with it. I will let it in. If the jury thinks it is worth anything, they can consider it in connection with all the evidence." The above ruling and remark of the court took place in the presence and hearing of the jury. Error is assigned on the ground that the remark of the court was hurtful to the defendant, and was in effect an instruction to the jury that the evidence "had no probative value as justifying the acts of the defendant." *Held:* (*a*) In a case of this kind, where the evidence is close and doubtful on the question of whether the verdict for murder was authorized, this ground of the motion requires the grant of a new trial. (*b*) The case is unlike *Young* v. *State*, 131 *Ga.* 498 (62 S. E. 707), cited by counsel for the State, where the court only stated, "I will admit it, and let the jury pass upon it for what it is worth," and where the court afterwards "explained to the jury that the remark should not be construed by them as containing any intimation on his part as to the weight the jury should give to the evidence." In that case it was said that it would have been better "to have admitted the testimony and omitted making the observation."

2. The other assignments of error are without merit, and do not require special mention.

No. 4601.    JANUARY 16, 1925.

Murder. Before Judge Roop. Troup superior court. September 10, 1924.

*M. U. Mooty,* for plaintiff in error.

*George M. Napier,* attorney-general, *W. Y. Atkinson,* solicitor-

*géneral, T. R. Gress, assistant attorney-general,* and *L. L. Meadors,* contra.

GILBERT, J.   1.   The evidence, as a whole, bears rather an ugly aspect with regard to the conduct of the deceased on the night of the homicide.   Without substantial conflict in the evidence it appears that two negro women were living on a farm in a two-room house some forty-five or fifty yards from the public highway. Also living in the house was a crippled, paralytic, practically helpless negro man.   A few nights before the homicide some one disturbed the occupants of this house by trying to break in at a late hour of the night.   One of the women communicated this fact to the accused.   It is inferable from the evidence that on account of this incident the accused was spending the night in the house of the women as a protection.   On that night the deceased, with three other white men, left Hogansville about 10:30 o'clock in an automobile, going to a dance at some resort about four miles distant from the place of the homicide.   On the way to the dance, and as the party approached the house where the homicide occurred, the deceased, who was driving the car, announced to his companions that he was going to get some whisky.   Accordingly he stopped on the highway near the house of the negroes above mentioned, and left his companions in the car, who protested against the announced purposes of the deceased, but he persisted.   He went around the house to the door, which was on the side of the house farthest from the road, and rapped on the door, calling to one of the women inmates.   This woman, under the evidence, did not bear a good reputation.   After the deceased had repeatedly knocked on the door, the accused, who was sleeping on the floor, was aroused and asked the deceased what he wanted.   The deceased replied that he wanted whisky, and insisted that he be allowed to enter; whereupon the accused obtained a pistol from a table and, in the darkness, fired in the direction of the door.   Unfortunately the bullet passed through the door and fatally wounded the deceased, who died within a few moments.   There was no evidence whatever of any animosity or ill will on the part of the accused, and the evidence authorizes the inference that the accused did not know at the time of the shooting who the deceased was.   Under all of the evidence the question is close and doubtful as to whether the verdict finding the accused guilty of murder was authorized.   Under these circum-

stances the assignment of error treated in the first headnote is deemed of more importance and the ruling of the trial judge calculated to have done more injury to the accused than in ordinary cases. We think, therefore, that the court erred in refusing to grant a new trial on this ground of the motion.

2. The second headnote does not require elaboration.

*Judgment reversed. All the Justices concur.*